**SUPREME WINE CO., Inc., Plaintiff-Appellant,**

v.

**The AMERICAN DISTILLING CO., Defendant-Appellee.**

**No. 57, Docket 27590.**

United States Court of Appeals Second Circuit.

Argued Oct. 23, 1962.

Decided Dec. 4, 1962.

Harold E. Cole, Boston, Mass. (Judah B. Felshin, New York City, of counsel), for plaintiff-appellant.

Leslie D. Taggart, Watson, Leavenworth, Kelton & Taggart, New York City (Robert C. Nicander, Nicholas John Stathis, New York City, of counsel), for defendant-appellee.

Before LUMBARD, Chief Judge, and MOORE and HAYS, Circuit Judges.

HAYS, Circuit Judge.

Appellant brought this action in the district court to review a decision of the

Patent Office Trademark Trial and Appeal Board [1] which sustained appellee's opposition to the appellant's registration of the trademark "Supreme" for vodka. Appellant further alleged infringement of its trademark "Supreme" for wines. Appellee counterclaimed alleging infringement of its trademarks "Bourbon Supreme" for whiskey, and "Supreme" for other distilled alcoholic beverages. The district court affirmed the decision of the Patent Office and held that although the appellant had a prior right to the registered trademark "Supreme" for wines, appellee's use of that mark for distilled alcoholic beverages did not infringe plaintiff's right. On the counterclaim, the district court held that the appellant's use of "Supreme" on distilled alcoholic beverages infringed the appellee's rights in the trademarks "Supreme" and "Bourbon Supreme" for such beverages, enjoined such infringement and ordered an accounting to appellee of appellant's profits resulting from the infringement. Before this court, the appellant seeks a determination that it is entitled as against the appellee to register "Supreme" as a trademark for vodka and reversal of the judgment on the counterclaim.

We hold that the word "supreme" is so totally lacking in distinctiveness, originality and uniqueness that, in the absence of compelling proof that it has acquired a secondary meaning to the buying public, it is not entitled to trademark protection. Accordingly, we affirm the order below insofar as it denies the appellant the right to register "Supreme"

1. American Distilling Co. v. Supreme Wine Co., Opposition No. 37,596, June 2, 1959.

2. Both parties and the court below have relied exclusively on federal law, apparently assuming that that law is applicable. While the question is not free from doubt (see the discussion in Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 540 n. 1 (2d Cir., 1956) and cases there cited, and the concurring opinion of Judge Clark, 234 F.2d at 545), we need not pass upon it in this case. The parties have made no suggestion that the application of state

as a trademark, and reverse that portion of the order which holds that the appellant infringed rights of the appellee in "Supreme" and "Bourbon Supreme" and orders an accounting.[2]

In order to qualify for trademark protection, a mark must be distinctive, that is, it must be capable of distinguishing the user's goods from others. Merely laudatory words, such as "best", "outstanding", or "supreme" cannot of their own force indicate the source or origin of the labeled goods. As was said in Burmel Handkerchief Corp. v. Clvett, Peabody & Co., 127 F.2d 318, 321, 29 CC PA 1024 (1942) (holding "Handkerchiefs of the Year" invalid):

"In the final analysis such expressions as we are discussing with relation to objects of trade are a 'puffing of wares' and are intended to call attention to the superiority of the advertised goods. Such expressions are a condensed form of describing in detail the outstanding character or quality of the objects to which they are applied. * * *

"[C]ommon expression[s] which can indicate nothing but high quality surely would not be indicative of origin to the purchasing public."

See Hiram Walker & Sons v. Penn-Maryland Corp., 79 F.2d 836 (2d Cir., 1935) ("Imperial"); Royal Silver Mfg. Co. v. National Silver Co., 61 F.Supp. 232 (S.D.N.Y.1945) ("Royal"). 3 Callman, Unfair Competition and Trade Marks §§ 69, 71.2 (2d ed. 1950). Compare In re Crosfield & Sons, Ltd., [1910] 1 Ch. 130, 141–142.

law would lead to a different result, nor has our research uncovered any state rule contrary to the result we reach herein. We decide the case according to the so-called general law of unfair competition. See Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 113 n. 1, 59 S.Ct. 109, 83 L.Ed. 73 (1938); Cridlebaugh v. Rudolph, 131 F.2d 795, 800 (3d Cir., 1943), cert. denied, 318 U.S. 779, 63 S.Ct. 855, 87 L.Ed. 1147 (1943); Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 119 F.2d 316, 322 (6th Cir., 1941) reversed on other grounds, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942).

It is for this reason that such laudatory epithets are normally available to all the world, and are not entitled to trademark protection.

The Patent Office has taken the same position, see e. g. Ex parte United States News Publ. Co., 99 U.S.P.Q. 322 (1953) ("Useful News for Important People"); Ex parte I. Lewis Cigar Mfg. Co., 95 U. S.P.Q. 224 (1952) ("The Biggest and Best Cigar"); Compania "Ron Bacardi", S.A. v. Ronrico Corp., 83 U.S.P.Q. 473 ("Best Rum Bar None"). Indeed registration of the word "Supreme" has been refused:

"The examiner states that the rejection is not on the ground that all laudatory phrases are unregistrable, but for the reason that the instant notation is merely a laudatory phrase and nothing more and he points out that the word 'Supreme' is defined in Webster's New International Dictionary, Second Edition, as '2. Highest in degree, quality, etc.; not exceeded by any other; also characterized by highest excellence.'

"Applicant is correct that Section 23 of the Act does not prohibit the registration of a trade mark merely because it is laudatory in character. However, Section 23 does require that the mark be of such a nature that it is capable of distinguishing applicant's goods or services. From the above quoted definition of 'Supreme' it is seen that it is a common ordinary laudatory term which is available for use by producers of merchandise in various fields to advertise their products, and hence is incapable of indicating the source of origin." Ex parte I. Lewis Cigar Mfg. Co., 95 U.S.P.Q. 225 (1952).

The word "Supreme" might be entitled to protection as a mark if it were shown that through constant association it had become synonymous with appellee's products in the mind of the buying public. As this court said in Hiram Walker & Sons v. Penn-Maryland Corp., supra, 79 F.2d at 838–839:

"a generic word may, through constant association, come to acquire a secondary significance denoting origin or ownership. American Medicinal Spirits Co. v. United Distillers, 76 F.(2d) 124 (C.C.A.2); G. & C. Merriam Co. v. Saalfield, 198 F. 369 (C.C.A.6). There is nothing here to indicate that the appellants recognized the selling power of appellee's name and intentionally endeavored to capitalize on it as in American Medicinal Spirits Co. v. United Distillers, supra. Therefore, it was the appellee's burden to prove that 'Imperial' and the certain whisky made by it had become synonymous to the buying public."

Appellee has not met the burden referred to in the Hiram Walker case.[3] While the evidence shows continuous sales of distilled alcoholic beverages by appellee under the name "Supreme" since 1941, no figures were introduced showing the extent of appellee's advertising expenditures. In the Hiram Walker case, the appellee manufacturer sought unsuccessfully to establish that the name "Imperial" had acquired a secondary meaning to the buying public by the affidavits of several bartenders and the proprietor of a liquor business stating that they always served appellee's product when a customer sought Imperial whiskey. Even such evidence is lacking in this case.

So much of the order appealed from as holds that either party has a valid trademark in the word "Supreme", and grants relief for the alleged infringement of such trademark, is reversed. In all other respects, the order is affirmed.

Affirmed in part, reversed in part.

3. In view of the vast number of products carrying the name "Supreme", establishing a secondary meaning may have become virtually impossible. See the leading English case of In re Crosfield & Sons, Ltd. [1910], 1 Ch. 130.